IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | |
|---|---|
| United States of America, ) | |
| ) | Cr. No. 1:10-4-MBS |
| vs. ) | |
| ) | **ORDER AND OPINION** |
| Daniel Charles Gerard Turno, ) | |
| ) | |
| Defendant. ) | |

On January 5, 2010, Defendant Daniel Charles Gerard Turno was indicted on one count of making and causing to be made materially false statements in a loan application, for the purpose of influencing the actions of State Credit Union, an institution with accounts insured by the National Credit Union Administration. Specifically, it was charged that when applying for a loan, Defendant represented an auto's total price as $27,350.00, knowing that this price was not, in fact, the auto's total price in violation of Title 18, United States Code, Section 1014. Defendant was represented by retained counsel. From June 15, 2010 to June 17, 2010, a jury trial was held. On June 17, 2010, Defendant was acquitted.

This matter is before the court on Defendant's Application for Attorney's Fees and Other Litigation Expenses. On July 22, 2010, the Government filed a response in opposition to Defendant's Application for Attorney's Fees and Other Litigation Expenses. On August 11, 2010, Defendant filed his reply. The court has considered the motion, memoranda, evidence, and applicable law. The court concludes that Defendant's application should be denied.

FACTS

On July 7, 2008, Defendant sought to pay property taxes on a 2006 Jeep Grand Cherokee ("Jeep"). *See* Response to Defendant's Application for Attorney's Fees and Other Litigation

Expenses, Ex. 2 at 2, 3, United States v. Turno, 1:10-4 (D.S.C. 2010), ECF No. 85 (hereinafter "Gov't Response"). Defendant called a friend, Daniel Moyer ("Moyer"), who worked at the Aiken County Treasurer's Office, to prepare a tax bill on the Jeep. Gov't Response, Ex. 4 at 9. Moyer called Nereyda Viteri ("Viteri") who prepared the tax bill based upon the retail value of the Jeep. Gov't Response, Ex. 2 at 3. Defendant, however, stated that he did not pay retail. *Id.* Defendant had Patsy Willing ("Mrs. Willing") fax a bill of sale for the Jeep to Moyer. Gov't Response, Ex. 4 at 9. The bill of sale indicated that Defendant paid $14,500 for the Jeep. *See* Gov't Response, Ex. 5 at 2. Viteri would not accept the bill of sale, so Defendant went to the Auditor's Office. *See* Gov't Response, Ex. 4 at 9-10; Gov't Response, Ex. 2 at 3. At the Auditor's Office, Defendant presented Viteri with a bill of sale representing the price of the Jeep to be $14,500. Gov't Response, Ex. 2 at 3. Viteri stated that Defendant would have to wait for the Auditor. Gov't Response, Ex. 2 at 3. Defendant became angry and eventually left. Gov't Response, Ex. 2 at 3-4. Viteri learned during the exchange that Defendant worked for the Department of Public Safety ("DPS") Highway Patrol Division. Gov't Response, Ex. 2 at 3-4. Viteri later filed a complaint against Defendant with DPS. Gov't Response at 2; Gov't Response Ex. 2. DPS initiated an internal investigation into the matter.

On October 6, 2008, the Director of the South Carolina Department of Public Safety ("DPS") sent a letter to the State Law Enforcement Division ("SLED") in which he stated "I am forwarding [the attached] information to you in order that a criminal investigation can be initiated." Suppression Hearing Tr. 13:5-23. The case was assigned to SLED Special Agent John Hiatt. Gov't Response at 3. Hiatt learned that the Jeep had been purchased with a loan from the State Credit Union and obtained a search warrant for State Credit Union's records on the Jeep. Gov't Response 85 at 3. Records obtained from the search warrant indicated that Defendant bought the Jeep for a total price

of $27,350 from Eddie's Auto and that there was no trade in. Gov't Response at 3; Gov't Response Ex. 3. On October 20, 2009, Hiatt and an assisting agent, Howard Baker, met with Defendant. Defendant provided a statement to Hiatt that he bought the Jeep for $14,500. Gov't Response, Ex. 4 at 9.

The Agents next approached Patsy and Eddie Willing, owners of Eddie's Auto, and requested records on the Jeep. Gov't Response at 4. Ms. Willing refused to cooperate and told the agents to get a search warrant. *Id.* On October 22, SLED agents obtained a search warrant for the business records of Eddie's Auto. Gov't Response at 2. The documents seized from Eddie's Auto included an Affidavit of Sale for the Jeep that did not include a price; a Bill of Sale that indicated a sale price of $14,500.00; a copy of the Eddie's Auto purchase order that indicated a sale price of $27,350.00 for the Jeep; and a receipt from the Atlanta Auto Auction indicating that Eddie's Auto bought the Jeep at auction for $17,440.00. Gov't Response at 4; Gov't Response Ex. 5. On October 30, 2008, Agents Hiatt and Baker again interviewed Defendant and asked him about the conflicting prices.

According to Defendant, on January 12, 2009, SLED submitted to the Second Circuit Solicitor an Investigative Report alleging that Defendant was "involved in a scheme to pay lower property taxes by reducing the purchase price on a newly acquired used vehicle." Def. Mot. for Attorney's Fees at 2. According to Defendant, on February 27, 2009, the Solicitor found "no criminal wrongdoing on the part of Daniel Turno and deem[ed] this matter closed." Def. Mot. for Attorney's Fees at 2. Defendant also asserts that in May 2009, the Director of DPS contacted the United States Attorney and requested that the Defendant be prosecuted for making a false statement to a credit union. Def. Mot. for Attorney's Fees at 2. On June 10, 2009, the United States Attorney referred the matter to the United States Secret Service. The Secret Service agent interviewed the loan

3

officer and branch manager at the State Credit Union. Neither the Secret Service nor SLED interviewed Eddie or Patsy Willing concerning the purchase price of the Jeep. The Secret Service agent has stated that he did not interview the Willings because they were uncooperative with SLED. Def. Mot. for Attorney's Fees at 3.

According to Defendant, in December 2009, the Director of DPS learned that Defendant would be indicted for making a false statement to a credit union and as a result, terminated the Defendant's employment with the South Carolina Highway Patrol on December 9, 2009. Defendant asserts that before the termination took effect, he purchased $12,809.73 worth of retirement service credits from the South Carolina National Guard so that he could secure his retirement as opposed to being terminated. Def. Mot. for Attorney's Fees at 3. Defendant has not submitted documentation to evidence the purchase of retirement credits. The Defendant was indicted on January 5, 2010.

On May 19, 2010, the court held a suppression hearing to address whether the statements Defendant provided to agents should be suppressed. Suppression Tr. 2. Defendant testified that he put down in his statement to SLED that he paid $14,500 for the Jeep, because he was discussing with SLED the information that was on the paperwork presented to the Auditor's Office. Suppression Tr. 89:22-90:21. Defendant admitted that his statement that he purchased the Jeep for $14,500 was not true because he paid $27,350 for the Jeep. Suppression Tr. 89:22-93:20.

On May 25, 2010, Defendant's attorney sent a letter to the United States Attorney's Office. Gov't Response Ex. 7. The letter indicated that if the case went to trial and Defendant was acquitted, he would seek attorney's fees and litigation costs under the Hyde Amendment. Gov't Response Ex. 7 at 1. The letter, in discussing the facts surrounding Defendant's purchase of the Jeep stated: "As part of the transaction, although not disclosed on any paperwork as an 'official' trade-in, [Defendant]

transferred a 2004 Mitsubishi to Eddie's, for Eddie's to sell." Gov't Response Ex. 7 at 2. Defense counsel now contends, however, that this was a poor choice of words and that there was no trade-in, contending that the sale of the Mitsubishi to Eddie's was a separate transaction. Also in the May 25, 2010 letter, Defense counsel revealed that "[o]n April 20, [2010,] Patsy Willing telephoned counsel and admitted that she created the bill of sale in July, and used $14,500 because that was the pay-off figure on the Mitsubishi (which was $14,572.330). She stated that she would take the blame for the false bill of sale being submitted to the county tax office." Gov't Response, Ex. 7 at 4. Defense counsel concluded its letter by asking that the U.S. Attorney reconsider going forward with the case. Gov't Response, Ex. 7 at 5. On June 8, 2010, the government offered pretrial diversion to Defendant. Def. Mot. for Attorney's Fees at 4, n.3. Defendant declined.

Trial was held beginning on June 15, 2010. At trial Defendant testified that he made a false statement to SLED in his October 20, 2009 statement when he indicated that he paid $14,500 for the Jeep. Trial Tr. 31:15-22, 39:21-40:7. Defendant indicates that he took this action to protect his wife, whose name appeared on the paperwork. Trial Tr. 31:18-22, 40:12-41:11. On June 17, 2010, Defendant was acquitted.

## DISCUSSION

### I. The Hyde Amendment

Defendant seeks attorney's fees and other litigation expenses pursuant to the Hyde Amendment, 18 U.S.C. § 3006A. Defendant specifically seeks $15,500 in attorney's fees including the costs required to file this petition, $1,491.49 in litigation costs, and the $12,809.73 he spent acquiring retirement credits. Def. Mot. for Attorney's Fees at 8.

The Hyde Amendment, while not codified, is set forth in the legislative notes following 18

U.S.C.A. § 3006A (West Supp.1999). The legislative notes state that:

> Pub.L. 105-119, Title VI, § 617, Nov. 26, 1997, 111 Stat. 2519, provided that: "During fiscal year 1998 and in any fiscal year thereafter, the court, in any criminal case (other than a case in which the defendant is represented by assigned counsel paid for by the public) pending on or after the date of the enactment of this Act [Nov. 26, 1997], may award to a prevailing party, other than the United States, a reasonable attorney's fee and other litigation expenses, where the court finds that the position of the United States was vexatious, frivolous, or in bad faith, unless the court finds that special circumstances make such an award unjust. Such awards shall be granted pursuant to the procedures and limitations (but not the burden of proof) provided for an award under section 2412 of title 28, United States Code. To determine whether or not to award fees and costs under this section, the court, for good cause shown, may receive evidence ex parte and in camera (which shall include the submission of classified evidence or evidence that reveals or might reveal the identity of an informant or undercover agent or matters occurring before a grand jury) and evidence or testimony so received shall be kept under seal. Fees and other expenses awarded under this provision to a party shall be paid by the agency over which the party prevails from any funds made available to the agency by appropriation. No new appropriations shall be made as a result of this provision.

18 U.S.C.A. § 3006A (West Supp.1999) (legislative notes). The Hyde Amendment requires a claimant (the former defendant) to prove by a preponderance of the evidence that: (1) the case was pending on or after the enactment of the Hyde Amendment; (2) the case was a criminal case; (3) he was not represented by assigned counsel paid for by the public; (4) he was a prevailing party; (5) the prosecution was vexatious, frivolous, or in bad faith; (6) the attorney's fees were reasonable; and (7) no special circumstances exist that would make an award unjust. *In re 1997 Grand Jury*, 215 F.3d 430, 436 n.8 (4th Cir. 2000) (citing *United States v. Pritt*, 77 F. Supp. 2d 743, 747 (S.D.W.Va. 1999)); *United States v. Truesdale*, 211 F.3d 898, 908 (5th Cir. 2000) (standard is preponderance of the evidence).

The government has conceded that the only Hyde Amendment requirement at issue in this case is whether the prosecution was vexatious, frivolous, or in bad faith. Gov't Response at 8. As

6

has been noted by many courts, but not yet by the Fourth Circuit, these elements are in the disjunctive, meaning that Defendant need only prove one of the elements to recover. *See, e.g., United States v. Manchester Farming Partnership*, 315 F.3d 1176, 1182 (9th Cir. 2003); *United States v. Skeddle*, 45 F. App'x 443, 445-56 (6th Cir. 2002). However, the Fourth Circuit has noted that a Hyde Amendment claim is difficult to prove stating:

> To prevail under the Hyde Amendment a lot more is required than a showing that the defendant prevailed at the pre-trial, trial or appellate stages of the prosecution. Unsupported assertions in a brief cannot substitute for evidence in the record. Consequently, the Hyde Amendment "places a daunting obstacle before defendants who seek to obtain attorney fees and costs from the government following a successful defense of criminal charges.

*1997 Grand Jury*, 215 F.3d at 436 (internal citations omitted). The Hyde Amendment was intended to target "prosecutorial misconduct, not prosecutorial mistake." *United States v. Gilbert*, 198 F.3d 1293, 1304 (11th Cir. 1999).

### a.   Vexatious

The Fourth Circuit has defined "vexatious" as "without reasonable or probable cause or excuse." *1997 Grand Jury*, 215 F.3d at 436. Defendant concedes that under this definition, this case was not vexatious. Def. Reply at 10. Defendant specifically concedes that the document from the credit union indicating that Defendant paid $27,350 for the Jeep and Defendant's October 20, 2008 written statement to SLED that he paid $14,500 for the Jeep constitute probable cause that the $27,350 was a false statement. Def. Reply at 11.

### b.   Frivolous

Defendant contends that his prosecution was frivolous. The court disagrees. The Fourth Circuit has defined a frivolous action as one that is "groundless with little prospect of success; often

7

brought to embarrass or annoy the defendant." *1997 Grand Jury*, 215 F.3d at 436 (internal citations omitted). Other circuits have found that claims are frivolous when they are "foreclosed by binding precedent or so obviously wrong as to be frivolous." *United States v. Manchester Farming Partnership*, 315 F.3d 1176, 1183 (9th Cir. 2003); *Gilbert*, 198 F.3d at 1304.

The record does not reflect that the government's position in this case was completely groundless with no prospect of success. Indeed, the court denied Defendant's motion for judgment of acquittal and sent the case to a jury.

### c. Bad Faith

Defendant contends that the government acted in bad faith in prosecuting this case. The Fourth Circuit has stated: "bad faith is not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity; it contemplates a state of mind affirmatively operating with furtive design or ill will." *1997 Grand Jury*, 215 F.3d at 436 (internal citations omitted). In *1997 Grand Jury*, the Fourth Circuit found that a failure by a prosecutor to further investigate alleged wrongdoing prior to bringing charges did not amount to bad faith, but instead was "simple negligence or lack of judgment." 215 F.3d at 437. Having carefully reviewed the record and Defendant's arguments, the court concludes that there is no evidence rising to the level of bad faith in this case.

## CONCLUSION

Based upon the foregoing, Defendant has not shown that the prosecution was vexatious, frivolous, or in bad faith. Therefore, attorney's fees are not proper. Defendant's Application for Attorney's Fees and Other Litigation Expenses (Entry 83) is **denied.**

**IT IS SO ORDERED.**

                                        <u>s/ Margaret B. Seymour</u>
                                        The Honorable Margaret B. Seymour
                                        United States District Judge

October 14, 2010
Columbia, South Carolina